# N. Y. COMMON PLEAS.

RANDOLPH W. TOWNSEND *et al.*, plaintiffs and appellants, agt. SIEGMUND M. PEYSER *et al.*, defendants and respondents.

Where the finding of a referee in favor of a defendant is unsupported by any evidence, the judgment thereon should be reversed and a new trial ordered.

And where the direct examination of the defendant as a witness upon the question in dispute is so contradicted upon his cross-examination as to destroy its force and effect as evidence, the court will consider that no evidence has been given to sustain the finding.

In the absence of an agreement in writing fixing a different compensation, a referee cannot lawfully claim more than three dollars for every day personally spent by him in the business of the reference.

It is not enough that the referee makes affidavit that before the trial of the action was commenced he informed the parties to it that his fees on the reference would be five dollars for every meeting of one hour, each adjournment to be considered a meeting, and that both parties consented and agreed thereto.

If the referee had procured such consent to said terms in writing, or had made a memorandum thereof upon his minutes at the time, it probably would have been sufficient.

*General Term, May,* 1873.

*Before* DALY, *Ch. J.,* LOEW *and* J. F. DALY, *JJ.* ·

APPEAL by the plaintiffs from a judgment entered on the report of a referee.

The facts sufficiently appear in the opinion of the court.

A. R. DYETT, *of counsel for plaintiffs and appellants.*

CHARLES PRICE *for the defendant and respondent,* Frederick M. Peyser.

Townsend agt. Peyser.

*By the Court,* LOEW, *J.*—This action was brought to recover compensation for professional services claimed to have been rendered at the request of the defendants, in reference to the mental condition and property of their brother, David M. Peyser, an alleged lunatic.

The referee has found as matter of fact that the defendant, Moritz M. Peyser, died after the commencement but prior to the trial of this action; that the defendant, Siegmund M. Peyser, did retain and employ the plaintiffs as his attorneys and counsel, and that they performed work, labor and services for him of the value of $2,500, but that the defendant, Frederick M. Peyser, did not retain or employ them, and that none of the services mentioned in the complaint were performed at his request.

Judgment was accordingly entered in favor of the defendant, Frederick M. Peyser, as against the plaintiffs, for his costs and disbursements.

It is now sought to have the said judgment reversed on the ground that the referee's finding is not only against the weight of evidence, but is unsupported by any evidence.

If there were in this case simply a conflict of evidence as to whether or not Frederick M. Peyser ever employed the plaintiffs, the finding of the referee, like the verdict of a jury, would be conclusive on that point, and we would not feel warranted in interfering, even though we might think that we would have come to a different conclusion on the subject. But it seems that there is really no conflict of evidence on the question of the plaintiffs' employment by the defendant, Frederick, as well as the other defendants.

On the part of the plaintiff, Mr. Townsend, Mr. Goldsmith and the defendant, S. M. Peyser, testified positively to a joint employment by the three defendants. Moreover, it was shown that Frederick called a number of times at the plaintiffs' office and consulted them in respect to the matters aforesaid, and he himself admitted that he signed and verified a

complaint, and also a petition, to have his brother Daniel M. declared a lunatic.

On the other hand, we have the evidence of Mr. Boardman and that of Frederick himself. The testimony of Mr. Boardman may readily be reconciled with that given on the part of the plaintiffs, and cannot therefore be said to be in conflict with it. But Frederick testified on his direct examination that at the first interview he had with his brothers, Siegmund and Moritz, in the plaintiffs' office, Siegmund wished to employ the plaintiffs, as attorneys and counsel, and he and Moritz desired that Benedict and Boardman should be employed; that finally it was agreed between them that he and Moritz should employ Benedict and Boardman, and Siegmund, the plaintiffs; that each should pay his own lawyers, but that they should, nevertheless, act in concert with each other; that this understanding was communicated to Mr. Townsend in his hearing by Siegmund, who asked him if he had any objection to it, and that Mr. Townsend answered that he had not.

On his cross-examination, however, he testifies to a different statement of facts. Being asked if he is positive that at the first interview at the plaintiff's office Mr. Townsend was informed by either of the defendants that each party was to pay his own counsel, he says that he can only repeat the very same answer he gave to the question before; that he is positive that it was on the stoop that it was agreed that each party should pay his own counsel, and when the question is repeated, he answers that he cannot say; that all he knows about it is that after they had agreed with each other Siegmund went into Mr. Townsend's office and told him that his brother wanted Benedict and Boardman as counsel in the matter, and asked him if he had any objections; that he cannot remember that anything else was communicated to Mr. Townsend at the first interview; that Mr. Townsend said he had no objections; and that there was nothing said in regard to employment at the second or third interviews.

This testimony is not only at variance, but in direct con-
flict, with that given by him on the same subject in his
examination in chief. It shows that if any agreement was
ever made by and between the defendants that Seigmund
should pay the plaintiffs, and Moritz and Frderick pay Bene-
dict and Boardman, the same was made on the stoop, and not
as he had previously testified, in the plaintiffs' office. It also
appears that so far from Mr. Townsend assenting to such an
arrangement, the same was not even communicated to him.

Now, if any part of the testimony given by Frederick is to
be credited, it is obvious that that given on his cross-examina-
tion must control that previously given by him, and in that
case his evidence does not materially contradict that of the
witnesses examined on the part of the plaintiffs, as the latter
all agree that Benedict and Boardman were to be consulting
counsel.

It follows that the finding of the referee in favor of Frede-
rick M. Peyser is unsupported by any evidence, and the
judgment should therefore be reversed, and a new trial
ordered.

As regards the order appealed from, I think the learned
judge, at special term, erred in deciding that the referee is
entitled to five dollars a day for sixty days.

In the absence of an agreement in writing, fixing a different
compensation, a referee cannot lawfully claim more than three
dollars for every day personally spent by him in the business
of the reference (*Code*, § 313; *Ct. of Appeals, Watson* agt.
*Gardner, MS. Op.; Shultz* agt. *Whitney,* 9 *Abb.,* 71).

In his affidavit the referee states that before the trial of the
action was commenced before him he informed the parties to
it that his fees on the reference would be five dollars for every
meeting of one hour, each adjournment to be considered a
meeting, and that both parties consented and agreed thereto.

If such was the case, he should have procured their consent
to said terms in writing, or at least made a memorandum
thereof upon his minutes at the time, which, I think, would

have been a sufficient compliance with the requirement of the Code (*Philbin* agt. *Patrick*, 22 *How.*, 1).

But it is not claimed that he did either; and as the three plaintiffs, as well as Mr. Fallon, who acted as their counsel on the trial of this cause, positively swear that no agreement in reference to the compensation of the referee was ever made by them, or either of them, or with their knowledge or consent, the order appealed from should be reversed, and a readjustment of the referee's fees ordered.

DALY, Ch. J., and J. F. DALY, J., concurred.